IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL RAY CHAVEZ,
                Plaintiff,

v.                                                                                                CV No. 19-1208 CG

ANDREW SAUL, Commissioner of the
Social Security Administration,

                Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Michael Ray Chavez's *Motion to Reverse and Remand with Supporting Memorandum* (the "Motion"), (Doc. 21), filed June 4, 2020; and Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 24), filed August 4, 2020. Mr. Chavez did not file a reply in support of his Motion, and the time to do so has now passed. *See* D.N.M. LR-Civ. 7.4(a).

Mr. Chavez filed an application for disability insurance benefits on August 21, 2016, alleging disability beginning August 20, 2009. (Administrative Record "AR" 57, 155). He later amended his disability onset date to August 22, 2015. (AR 67). In his application, Mr. Chavez claimed he was unable to work due to agoraphobia, post-traumatic stress disorder ("PTSD"), persistent depressive disorder, alcohol use disorder, and borderline personality disorder. (AR 185). Mr. Chavez's application was denied initially on November 3, 2016, and upon reconsideration on August 24, 2017. (AR 62, 89). Shortly thereafter, Mr. Chavez requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 27, 2018. (AR 31, 105).

At the hearing, Mr. Chavez appeared before ALJ Ann Farris with his attorney Gary Martone and impartial Vocational Expert ("VE") Karen Provine. (AR 31, 97, 303). On March 1, 2019, the ALJ issued her decision, finding Mr. Chavez not disabled at any time between his amended alleged onset date, August 22, 2015, through the date of her decision. (AR 26). Mr. Chavez requested review by the Appeals Council, which was denied, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (AR 1-2, 153); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) ("If the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision.").

In his Motion, Mr. Chavez argues the following errors require remand: (1) the ALJ failed to weigh several medical opinions as required by Social Security regulations and case law; and (2) of the opinions the ALJ did discuss, the ALJ erred in her assessment of those opinions. (Doc. 21 at 5-15). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ committed a harmful legal error, the Court finds Mr. Chavez's Motion shall be **GRANTED** and the case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

   **I.   Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the

plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (internal citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted) (alteration made).

    **II.**    **Applicable Law and Sequential Evaluation Process**

A claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i-iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ proceeds to step five of the SEP. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.     Background

In his application, Mr. Chavez alleged he was limited in his ability to work due to agoraphobia, PTSD, persistent depressive disorder, alcohol use disorder, and

---

1.    20 C.F.R. pt. 404, subpt. P, app. 1.

borderline personality disorder. (AR 185). At step one, the ALJ determined Mr. Chavez had not engaged in substantial gainful activity since his amended alleged onset date. (AR 17). At step two, the ALJ found Mr. Chavez had the following severe impairments: PTSD, anxiety disorder, depressive disorder, and alcohol use disorder. (AR 17). At step three, the ALJ determined Mr. Chavez's impairments did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (AR 18). The ALJ then found Mr. Chavez had the RFC to perform "a full range of work at all exertional levels." (AR). Additionally, the ALJ included the following restrictions: "[Mr. Chavez] can have no interactions with the general public, only occasional and superficial interactions with co-workers and supervisors, cannot perform work at a production rate pace and cannot perform tandem tasks." (AR 20).

In formulating Mr. Chavez's RFC, the ALJ stated she considered Mr. Chavez's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 20-21). In addition, the ALJ stated she considered opinion evidence consistent with the requirements of 20 C.F.R. § 404.1527. (AR 21). The ALJ concluded that some of Mr. Chavez's impairments could be expected to cause his alleged symptoms, but she found the intensity, persistence, and limiting effects Mr. Chavez described were not entirely consistent with the evidence in the record. (AR 21).

As for the opinion evidence, the ALJ gave "significant weight" to the opinion of psychological consultative examiner Amy DeBernardi, Psy.D. (AR 23). Next, the ALJ gave "partial weight" to the opinions of State Agency psychological consultants Mark McGaughey, Ph.D., and Richard Sorensen, Ph.D. (AR 24). Finally, the ALJ gave

"partial weight" to statements given by Mr. Chavez's mother, Louise DeHart. (AR 24, 204, 257).

At step four, the ALJ found Mr. Chavez was unable to perform his past relevant work as a material handler. (AR 24-25). At step five, the ALJ determined Mr. Chavez had at least a high school education and could communicate in English. (AR 25). Relying on the VE's testimony, the ALJ found that considering Mr. Chavez's age, education, work experience, and assessed RFC he could perform other work as a commercial institution cleaner, hospital cleaner, and laboratory equipment clerk. (AR 25-26). After finding Mr. Chavez was able to perform other work existing in significant numbers in the national economy, the ALJ concluded he was "not disabled," as defined by 20 C.F.R. §§ 404.1520(g), from August 22, 2015 through the date of the decision. (AR 26).

## IV.  Analysis

Mr. Chavez presents two arguments in his Motion. (Doc. 21 at 1). First, Mr. Chavez argues the ALJ failed to weigh and consider several medical opinions as required by Social Security regulations and case law. *Id.* at 5-12. Second, Mr. Chavez asserts that the opinions the ALJ did weigh, she did so improperly. *Id.* at 6, 12-15.

In response, the Commissioner contends the ALJ's determination that Mr. Chavez was not disabled is supported by substantial evidence and legally sound. (Doc. 24 at 8-11). Specifically, with respect to Mr. Chavez's argument that the ALJ failed to weigh and consider several medical opinions, the Commissioner maintains these were not medical opinions, and therefore, the ALJ was not required to weigh them. (AR 11-17). As for the opinions the ALJ did weigh, the Commissioner argues the ALJ reasonably evaluated and weighed these opinions, and Mr. Chavez's arguments to the

contrary are unpersuasive. *Id.* at 17-23.

  *A. Omitted Opinion Evidence*

  Mr. Chavez alleges the ALJ omitted a proper discussion and weight assessment of several opinion statements, in contravention of Social Security regulations and case law. (Doc. 21 at 5-6). According to Mr. Chavez, the omitted opinions include the following: a July 2016 statement from Mr. Chavez's treating psychologist Freda McKeown, Ph.D., LPCC; a July 2016 neuropsychological evaluation from Michael Carvajal, Psy.D., Jennifer Monzones, Ph.D., and Bandi Seaman, B.A. ("the Carvajal Evaluation"); a February 2017 neuropsychological evaluation from Sandra Montoya, Ph.D. ("the Montoya Evaluation"); a December 2017 neuropsychological evaluation from Barbara Koltuska-Haskins, Ph.D. ("the Koltuska-Haskins Evaluation"); and May 2018 treatment notes from Mr. Chavez's treating psychiatrist John Sahs, M.D. *Id.* at 6. Mr. Chavez contends the ALJ's failure to provide proper analysis of these opinions is harmful because had the restrictions contained in these opinions been adopted, they would have supported a finding of disability. *Id.* at 7.

  The Commissioner responds that the ALJ did not commit an error because the ALJ discussed the bulk of the records cited by Mr. Chavez. (Doc. 24 at 11). Moreover, the Commissioner argues these records do not contain any medical opinions that the ALJ was required to weigh. *Id.* Further, the Commissioner asserts that even if these statements were considered opinions, they were consistent with the RFC and therefore the failure to consider them was a harmless error. *Id.* at 15.

  Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion and the reasons for the assigned weight. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)

7

(citation omitted); SSR 96-8p, 1996 WL 374184, at *7. In doing so, the ALJ must also consider several factors set forth by the regulations. 20 C.F.R. § 404.1527(c).[2] A medical opinion is defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). An ALJ should provide a weight assignment with explanation for opinions from both acceptable and non-acceptable medical sources, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2).

The Tenth Circuit has found that where statements lack a "judgment about the nature and severity of [a claimant's] physical limitations, or any information about what activities [the claimant] could still perform" do not constitute medical opinions. *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (explaining that a doctor's treatment notation stating that he "would give [the claimant] a work release if he wanted one, but would not guarantee that he would not have any recurrent symptoms" was not a medical opinion); *see also McDonald v. Astrue*, 492 F. Appx. 875, 884 (10th Cir. 2012) (finding that treatment records which contain the clinicians' observations of symptoms, the nature of the claimant's impairments, the clinicians' diagnoses, and the clinicians' mental health functioning scores address the severity of the claimant's symptoms and

---

2. These regulations apply because Mr. Chavez's application was filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

functional difficulties only in general terms and therefore do not constitute medical opinions).

      *i.*      *Dr. McKweon's Treatment Notation*

Mr. Chavez argues that a July 2016 discharge note authored by Dr. McKeown constitutes a medical opinion and therefore should have been addressed and weighed by the ALJ. (Doc. 21 at 7-8). The Commissioner acknowledges the ALJ did not discuss this particular notation, but contends the ALJ is only required to discuss significantly probative evidence, and this note was not significantly probative. (Doc. 24 at 12). Additionally, the Commissioner asserts Dr. McKeown's notation was not a medical opinion and thus the ALJ was not required to weigh it. *Id.* Moreover, to the extent Dr. McKeown's notation commented on Mr. Chavez's isolationist tendencies, the Commissioner argues the ALJ's RFC social limitations accommodated this symptom. *Id.* at 13.

In support of his argument, Mr. Chavez highlights several portions of Dr. McKeown's discharge notation that he alleges constitute a medical opinion. (Doc. 21 at 8). They are as follows: after twelve treatment sessions, Dr. McKeown wrote that Mr. Chavez reported he had started feeling better about himself; Dr. McKeown wrote that despite connecting with the Department of Vocational Rehabilitation, Mr. Chavez continued to self-isolate; Dr. McKeown indicated that Mr. Chavez would benefit from further treatment; and finally Dr. McKeown recommended Mr. Chavez continue with Alcoholics Anonymous ("AA") but predicted he probably would not attend due to his tendency to self-isolate. *Id.* (citing to AR 321).

Dr. McKeown's notations describe Mr. Chavez's mental condition after twelve sessions of therapy, his recommendation for treatment, and his predictions on Mr.

9

Chavez's ability to follow through on his treatment recommendations. As such, Dr. McKeown's statements do not reflect his judgment about the nature and severity of Mr. Chavez's mental impairments, including what Mr. Chavez could still do despite impairments. *See* 20 C.F.R. § 404.1527(a)(1). Rather, Dr. McKeown's statements address the severity of Mr. Chavez's symptoms and functional difficulties only in general terms, and as such cannot be deemed a medical opinion. *See McDonald*, 492 F. Appx. at 884 (explaining that treatment notes which speak to the severity of a claimant's symptoms in only general terms are not a medical opinion). Accordingly, the Court finds that Dr. McKeown's July 2016 discharge notes do not constitute a medical opinion, and therefore, the ALJ was not required to weigh Dr. McKeown's statements as she would a medical opinion. Thus, the Court denies Mr. Chavez's request to remand on this basis.

    *ii.    The Carvajal Evaluation*

Mr. Chavez alleges that a July 2016 neuropsychological evaluation authored by Drs. Carvjal and Monzones and Ms. Seaman contains statements that are medical opinions. (Doc. 21 at 8). The Commissioner highlights the ALJ extensively discussed the Carvajal Evaluation, having specifically cited to it twelve times and discussed its key findings. *Id.* at 14-15. Additionally, the Commissioner contends the Carvajal evaluation does not contain a medical opinion. *Id.* at 15. Rather, the Commissioner claims the Carvajal Evaluation "vaguely concluded that [Mr. Chavez's] depression and anxiety limited him to some degree, they recommended therapy and medications [but it] did not describe any specific work-related functional limitations." *Id.* (citing AR 345). Moreover, the Commissioner argues the ALJ acknowledged findings from the Carvajal Evaluation, including symptoms arising from Mr. Chavez's depression and anxiety, and specifically accommodated these symptoms in the RFC assessment. *Id.* Therefore, according to

10

the Commissioner, even if statements contained in the Carvajal Evaluation were deemed opinions they were fully consistent with the RFC. *Id.*

In support of his argument that the Carvajal Evaluation contains a medical opinion, Mr. Chavez points to subjective complaints he made to the Carvajal evaluators, clinical findings documented by the evaluators, impairments diagnosed by the evaluators, and diagnostic test results. *See* (Doc. 21 at 8-9) (citing AR 345). Additionally, Mr. Chavez notes the "evaluators opined that [his] condition is fairly complex, and will require [an] intensive, multi-modal approach if his function is going to improve." *Id.* (citing AR 345) (alteration made).

In the Court's own examination of the Carvajal Evaluation, there are several statements that stand out as significant. First, the evaluators wrote that Mr. Chavez was "experiencing significant functional impairment at the time of his evaluation, which was due to severe levels of emotional distress endorsed across a variety of clinical areas." (AR 345).  This statement along with a statement recited by Mr. Chavez—that his condition was fairly complex and would require intensive multi-modal approach—reflect judgments made by the Carvajal evaluators about the nature and severity of Mr. Chavez's impairments. Indeed, the statement that Mr. Chavez had a "significant functional limitation" describes a limitation imposed by his impairments, albeit a limitation that is undefined and lacking vocationally significant terms. Yet, there is no requirement that medical opinions be written in vocationally significant terms. *See* 20 C.F.R. § 404.1527(a)(1) (defining a medical opinion as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

11

Thus, the Court finds that these two statements are medical opinions, and as a result, the ALJ was required to weigh them accordingly. The ALJ did not weigh these opinions, and furthermore, they are more restrictive than the limitations imposed by the RFC. For these reasons, the Court finds the ALJ committed a harmful legal error in her failure to address and weigh these statements as medical opinions.

    *iii.*    *The Montoya Evaluation*

Mr. Chavez alleges that a February 2017 neuropsychological evaluation authored by Dr. Montoya contains statements that are medical opinions that were not properly addressed and weighed as opinion evidence by the ALJ. (Doc. 21 at 6-7, 9). The Commissioner responds that the ALJ extensively discussed Dr. Montoya's evaluation, having cited to her evaluation eight times in the RFC discussion. (Doc. 24 at 14). Furthermore, the Commissioner points to the ALJ's discussion of "several material aspects of the Montoya Evaluation, including [Mr. Chavez's] average to above-average scores in cognitive function tests and an IQ above 92 and 93; reports from [Mr. Chavez's] mother. . . that [Mr. Chavez] had difficulties with memory, concentration, following instructions, and social interaction; and Dr. Montoya's observation that [Mr. Chavez] had depression and anxiety." *Id.* at 14 (citing AR 22-24, 402-407). Additionally, the Commissioner maintains that the Montoya Evaluation does not contain any medical opinions, but instead it diagnoses Mr. Chavez with mild cognitive disorder and "vaguely concluded that [Mr. Chavez's] depression and anxiety limited him to some degree, [] recommended therapy and medication and did not describe any work-related functional limitations." *Id.* at 15 (citing AR 406-407). Moreover, the Commissioner argues that the ALJ accommodated Mr. Chavez's symptoms in the RFC assessment, and therefore, even if statements were deemed a medical opinion, the opinion is fully consistent with

12

the RFC assessment. *Id.* at 15.

In support of his contention that Dr. Montoya's evaluation contains a medical opinion, Mr. Chavez cites to several of Dr. Montoya's treatment recommendations, clinical findings, and diagnostic test results. (Doc. 21 at 9). One notation is particularly relevant: Dr. Montoya wrote that Mr. Chavez "may very well need a job coach, at least until the demands are familiar enough to him that he can manage them quickly and easily." (AR 407). This statement clearly reveals Dr. Montoya's judgment that Mr. Chavez be afforded the work-related restriction of a job coach. As such, the Court does not accept the Commissioner's contention that this statement constitutes a "vague conclus[ion] that [Mr. Chavez's] depression and anxiety limited him to some degree." (Doc. 24 at 15). While Dr. Montoya's statement may lack some certitude, it nevertheless evinces a sufficiently high degree of likelihood that in Dr. Montoya's judgment, Mr. Chavez requires a job coach. Moreover, Dr. Montoya's recommended use of a job coach is clearly a work-related limitation that potentially eliminates all competitive work. *See* 20 C.F.R. § 404.1572(c) (explaining that "work done under special conditions," such as in a "sheltered workshop," might be found to show that a claimant is unable to work); *see also Hambrick v. Astrue*, No. 09-CV-689-PJC, 2011 WL 651408, at *6 (N.D. Okla. Feb. 11, 2011) (unpublished) ("Had the RFC included a requirement that [the claimant] have a job coach or a supportive supervisor, this may well have barred competitive employment.") (citing *Jackson v. Barnhart*, 60 Fed. Appx. 255, 258-60 (10th Cir. 2003)). Thus, the Commissioner's argument that this restriction is consistent with the RFC assessment is similarly inaccurate.

Accordingly, the Court finds Dr. Montoya's statement regarding use of a job coach constitutes a medical opinion requiring a proper opinion analysis, including

13

assignment of weight. Because the ALJ failed to address this statement, and because it is more limiting than the ALJ's RFC, the Court finds the ALJ committed a harmful legal error by failing to address Dr. Montoya's statement.

    *iv.    The Koltuska-Haskin's Evaluation*

Next, Mr. Chavez asserts statements contained in Dr. Koltuska-Haskin's evaluation are medical opinions that require a proper opinion analysis, and the failure to do so is a harmful legal error. (Doc. 21 at 5-6, 10-11). The Commissioner contends Dr. Koltuska-Haskin's Evaluation does not contain any work-related functional limitations. (Doc. 24 at 15). Rather, the Commissioner asserts the ALJ acknowledged Mr. Chavez's symptoms and Dr. Koltuska-Haskin's pertinent findings and specifically accommodated these in the RFC assessment. *Id.* Therefore, according to the Commissioner, even if statements contained in Dr. Koltuska-Haskin's Evaluation were deemed medical opinions they were fully consistent with the RFC. *Id.*

Mr. Chavez points to several statements made by Dr. Koltuska-Haskin that he alleges constitute medical opinions. (Doc. 21 at 10-11). In particular, he cites to Dr. Koltuska-Haskin's summarization of her findings, including findings that show "cognitive problems. . . in the areas of executive functioning, attention/concentration, and some difficulty in processing verbal information." *Id.* at 10 (quoting AR 430) (internal quotation marks omitted). Dr. Koltuska-Haskin also noted problems in the area of emotional functioning resulting in a diagnosis of mood disorder and PTSD. *Id.* Mr. Chavez cites to Dr. Koltuska-Haskin's statements on the etiology of his symptoms, and her recommended courses of treatment. *Id.* In one particularly relevant statement, Dr. Koltuska-Haskin wrote that "a letter of accommodations may be provided upon request." *Id.*

14

In viewing these statements from Dr. Koltuska-Haskin more broadly, they relate to her clinical findings, her belief on the causes of Mr. Chavez's symptoms, and her recommended courses of treatment. In effect, these statements address the severity of Mr. Chavez's symptoms and functional difficulties only in general terms. *McDonald*, 492 F. Appx. at 884 (explaining that treatment notes which speak to the severity of a claimant's symptoms in only general terms are not a medical opinion). Indeed, in her only reference to mental limitations, she states she would provide a letter outlining her recommended restrictions upon request, thereby indicating that her evaluation does not contain her judgment about Mr. Chavez's mental restrictions. (AR 430).

In short, Dr. Koltuska-Haskin's statements do not reflect her judgment about the nature or severity of Mr. Chavez's condition or what activities she believes Mr. Chavez could or could not perform because of his impairments. For these reasons, the Court finds that Dr. Koltuska-Haskin's Evaluation, and the statements contained therein, do not constitute a medical opinion requiring the ALJ to provide a full opinion analysis, including the assignment of weight. Thus, the ALJ's failure to do so does not constitute a legal error.

    v.    *Dr. Sahs's Treatment Notations*

Lastly, Mr. Chavez asserts that a May 2018 treatment note from Dr. Sahs constitutes a medical opinion and therefore required a full opinion analysis by the ALJ. (Doc. 21 at 6, 10). According to Mr. Chavez, the ALJ's failure to do so is a harmful legal error. *Id.* The Commissioner responds that Dr. Sahs's treatment notes were discussed six times by the ALJ in her RFC discussion, and furthermore, they did not contain a medical opinion that the ALJ was required to weigh. (Doc. 24 at 16-17).

In his Motion, Mr. Chavez highlights several portions of Dr. Sahs's treatment

records that he contends should be a deemed a medical opinion. (Doc. 21 at 10). These portions are as follows: Mr. Chavez showed some initial improvement on the medication Zoloft; Mr. Chavez informed Dr. Sahs that he was trying to find a therapist closer to home, and he continued to have difficulty with concentration, feeling down, depressed, hopeless, irritable, and restless; and Dr. Sahs referred Mr. Chavez to therapy. *Id.* (citing AR 433, 436).

In considering the treatment notes in question more broadly, they discuss Mr. Chavez's reported symptoms, Dr. Sahs's documented clinical findings, Dr. Sahs's recommended courses of treatment including therapy and medication management, and Mr. Chavez's diagnoses as identified by Dr. Sahs. *See* (AR 432-440). As such, these records address the severity of Mr. Chavez's symptoms and functional difficulties only in general terms. *McDonald*, 492 F. Appx. at 884 (explaining that treatment notes which speak to the severity of a claimant's symptoms in only general terms are not a medical opinion). Moreover, they are devoid of a specific judgment from Dr. Sahs about the nature or severity of Mr. Chavez's condition or the limitations imposed by his impairments. *See Cowan*, 552 F.3d at 1189 (finding statements that lack a "judgment about the nature and severity of [a claimant's] physical limitations, or any information about what activities [the claimant] could still perform" are not medical opinions).

For these reasons, the Court finds Dr. Sahs's treatment records, as identified by Mr. Chavez, do not constitute a medical opinion, and therefore, the ALJ was not required to consider and weigh them as a medical opinion. Thus, the ALJ's failure to do so was not a legal error, and the Court denies Mr. Chavez's request to remand on this basis.

**V.     Conclusion**

For the foregoing reasons, the Court finds the ALJ did not commit a harmful legal error in her assessment of treatment notations from Drs. McKeown and Sahs. However, the Court finds the ALJ erred in failing to weigh and analyze medical opinions contained in the Carvajal and Montoya Evaluations, contrary to standards set by Social Security regulations and case law.

**IT IS THEREFORE ORDERED** that Mr. Chavez's *Motion to Reverse and Remand with Supporting Memorandum*, (Doc. 21), is **GRANTED** and this case is **REMANDED** for additional proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE